IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 15-00190 LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TALANIVALU OLOTOA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Talanivalu Ygnacio
Olotoa's ("Defendant") Motion to Suppress ("Motion"), filed on
April 13, 2016. [Dkt. no. 75.] Plaintiff the United States of
America ("the Government") filed its memorandum in opposition on
April 25, 2016. [Dkt. no. 83.] This matter came on for an
evidentiary hearing on May 10, 2016. After careful consideration
of the Motion, supporting and opposing memoranda, and the
evidence presented at the hearing, Defendant's Motion is HEREBY
DENIED for the reasons set forth below.

**BACKGROUND**

On March 12, 2015, Defendant was indicted for: one
count of conspiracy to distribute and possess with intent to
distribute fifty grams or more of methamphetamine, its salts,
isomers, and salts of its isomers, in violation of 21 U.S.C.
§ 841(a)(1) and (b)(1)(A) and § 846; one count of knowingly and
intentionally distributing fifty grams or more of

methamphetamine, its salts, isomers, and salts of its isomers, in violation of § 841(a)(1) and (b)(1)(A); and one count of knowingly and intentionally distributing hydrocodone, in violation of § 841(a)(1) and (b)(1)(C).  The instant Motion challenges the canine search that alerted officials to the presence of a controlled substance within a package allegedly sent by Defendant.  Specifically, Defendant seeks more information regarding whether the dog in question, "Zorro," was properly trained and certified, and whether or not the alert to the narcotics in the package was sufficiently reliable to establish probable cause for the subsequent search warrant issued by the magistrate judge.  [Mem. in Supp. of Motion at 6.]

On November 7, 2013, while conducting an Express Mail profiling operation at the Honolulu Mail Processing and Distribution Center, United States Postal Inspector Jensen Rodrigues ("Inspector Rodrigues") noticed a package ("the Package") with the following characteristics:  "the areas of mailing and destination [were] known to have either received narcotics or been areas from where narcotics have been known to be shipped"; it was heavily taped on all sides; gently shaking it revealed that it was densely packed; and the sender had signed the "Waiver of Signature" section of the package label.  [Exh. 2 (Application and Aff. for Search Warrant, Aff. of J.X. Rodrigues)

2

("Rodrigues Aff.") at ¶¶ 6-7.[1]]  Moreover, Inspector Rodrigues performed a search "through known law enforcement databases and US Postal Service records," and found that, while the return address was a legitimate business, it was not associated with the business specified on the mailing label – I.S.L., Inc.[2]  [Id. at ¶ 7.d.]  Pursuant to his training and experience, Inspector Rodrigues believed that these characteristics indicated that the Package may have contained a controlled substance.

The same day, the package was "presented for external examination by State of Hawaii Department of Public Safety narcotics detector canine 'Zorro' at the Honolulu Domicile." [Id. at ¶ 8.]  Zorro's handler, Deputy Sheriff Randall Silva ("Deputy Silva"), informed Inspector Rodrigues that Zorro exhibited a change in behavior consistent with detecting the odor of a controlled substance.  [Id.]  Thereafter, Inspector Rodrigues applied for and received a search warrant from the magistrate judge.  See Exh. 2.  At the hearing on the Motion, Inspector Rodrigues testified that:  upon searching the Package, he found another box that contained a rice cooker; and, inside of

_____

[1] At the hearing on the Motion, the parties stipulated to having all exhibits entered into evidence.

[2] Also on November 7, 2013, Inspector Rodrigues requested and received a search warrant for another package that Zorro's behavior had indicated may contain a controlled substance. [Rodrigues Aff. at ¶¶ 9-12.]  At the hearing, Inspector Rodrigues testified that no contraband was found in the second package.

the rice cooker, he found the contraband that gave rise to the instant criminal matter.

## STANDARD

"A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) (alterations, some citations, and internal quotation marks omitted) (citing Texas v. Brown, 460 U.S. 730, 742, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983) (plurality opinion)). Moreover, "[i]n evaluating whether the State has met this practical and common-sensical standard, we have consistently looked to the totality of the circumstances," id. (citations omitted), and "[w]e have rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-thing-considered approach," id. The United States Supreme Court held that,

> a probable-cause hearing focusing on a dog's alert should proceed much like any other. The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to decide what all the circumstances demonstrate. If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast, the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court

4

> should weigh the competing evidence.  In all
> events, the court should not prescribe, as the
> Florida Supreme Court did, an inflexible set of
> evidentiary requirements.  The question – similar
> to every inquiry into probable cause – is whether
> all the facts surrounding a dog's alert, viewed
> through the lens of common sense, would make a
> reasonably prudent person think that a search
> would reveal contraband or evidence of a crime.  A
> sniff is up to snuff when it meets that test.

Id. at 1058.

## DISCUSSION

At the hearing, Deputy Silva testified that he worked

with Zorro from 2007 until Zorro's retirement in Spring 2014.

Deputy Silva told the Court that, as a team, he and Zorro had

passed their most recent Canine Unit certification on August 23,

2013, including, *inter alia*, a test of Zorro's ability to detect

methamphetamine.[3]  See Exh. 3 (Narcotics Dog Certification).  In

addition, Deputy Silva described the most recent certifications

he and Zorro received from:  American Working Dogs,[4] dated

March 7, 2013, see Exh. 4; and California Narcotic Canine

Association,[5] dated March 7, 2013, see Exh. 5.  Like the Canine

Unit certification, these certifications are good for one year

---

[3] The Canine Unit is part of the State of Hawai`i, Department of Public Safety's Sheriff Division.

[4] American Working Dogs is a private canine training and certification organization.

[5] The California Narcotic Canine Association is a private canine training and certification organization.  Exhibit 5 shows Zorro's certifications from the organization going back to 2008.

from the date of issue.[6]

Deputy Silva explained that, on the date in question, he did not see Inspector Rodrigues place the Package in the search area, and they were surrounded by hundreds of other packages and envelopes.  Deputy Silva led Zorro through the area on a six-foot leash, and upon being told to "sniff," Zorro began to search the area.  When Zorro reached the Package, he exhibited behavior to indicate the presence of a controlled substance.[7]

Defendant submits that Zorro's field log, see Exh. 8, shows an "error rate" of sixteen percent, which is a factor in determining whether or not the dog sniff in the instant action was reliable.[8]  In Harris, however, the Supreme Court questioned the use of field performance in determining the reliability of a dog sniff:

---

[6] Deputy Silva testified that, in addition to the certifications he and Zorro received as a team, he has many additional certifications in narcotic canine training and handling.  See Exh. 6 (proof of attendance at various meetings and completion of various trainings).

[7] Deputy Silva testified that Zorro is a "passive alert canine," and as such, he sits or lays down next to a target if he detects a controlled substance.

[8] The Court notes that Defendant also questioned the training logs the Government submitted.  See Exh. 7.  The Court agrees with Defendant that this information is not useful, as Deputy Silva testified that the State of Hawaii's narcotic canines are not allowed to fail in training, and adjustments are made to ensure their success.  Thus, every dog will have training records that indicate a 100% success rate.

Making matters worse, the decision below treats records of a dog's field performance as the gold standard in evidence, when in most cases they have relatively limited import.  Errors may abound in such records.  If a dog on patrol fails to alert to a car containing drugs, the mistake usually will go undetected because the officer will not initiate a search.  Field data thus may not capture a dog's false negatives.  Conversely (and more relevant here), if the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all.  The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate.  Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person.  Field data thus may markedly overstate a dog's real false positives.  By contrast, those inaccuracies – in either direction – do not taint records of a dog's performance in standard training and certification settings. There, the designers of an assessment known where drugs are hidden and where they are not – and so where a dog should alert and where he should not. The better measure of a dog's reliability thus comes away from the field, in controlled testing environments.

Harris, 133 S. Ct. at 1056-57 (footnotes omitted); see also

United States v. Contreras, No. CR 15-00242 DKW, 2015 WL 3649806,

at *7 (D. Hawai`i June 10, 2015) ("Defense challenges to [the

dog's] reliability, based on [the dog's] field performance, are

unpersuasive.").  For this reason, the Supreme Court stated that,

"evidence of a dog's satisfactory performance in a certification

or training program can itself provide sufficient reason to trust

his alert."[9]  Id. at 1057.

_____

[9] The Supreme Court continued, "[i]f a bona fide organization has certified a dog after testing his reliability in

(continued...)

7

Here, Zorro had valid certifications not only from the State of Hawaii's Canine Unit, but two additional certifying organizations.  While Sheriff Charles Lacaden testified that, to his knowledge, no dog has ever failed the Canine Unit certification process in his twenty-one years with the department, any questioning of the certification process by the Court would be speculative.  As presented here, there is sufficient evidence that Zorro successfully completed drug detection testing, maintained proficiency, and re-certified on a yearly basis.  Moreover, it is clear to the Court that Zorro was certified at the time of this particular sniff, when he alerted his handler to the Package.

To the extent that Defendant questions whether or not the search warrant was based on sufficient information because of Inspector Rodrigues's use of the aforementioned database to verify the address of the sender and the recipient, Inspector Rodrigues provided information about that search to the magistrate judge, who then issued the warrant.  This district court has stated that:

> In assessing probable case for purposes of a search warrant, a magistrate judge must consider the facts and circumstances presented in the warrant application, including the supporting

---

[9](...continued)
a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."  Harris, 133 S. Ct. at 1057.

affidavit, in a practical, common-sense manner, and must fined that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).  A reviewing court must evaluate a magistrate judge's decision to issue a warrant with great deference, only examining whether the magistrate judge had a "substantial basis" for concluding that probable cause existed." <u>Id.</u> at 238-39.

<u>Contreras</u>, 2015 WL 3649806, at *8.  Here, the Court FINDS that there was a "substantial basis" for the magistrate judge's decision.  <u>See</u> <u>id.</u> (citation and internal quotation marks omitted).

The Court FINDS that, given "the totality of the circumstances," <u>see</u> <u>Harris</u>, 133 S. Ct. at 1535, there is no reason to suppress the evidence at issue here.

## CONCLUSION

On the basis of the foregoing, Defendant Talanivalu Ygnacio Olotoa's Motion to Suppress, filed on April 13, 2016, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 17, 2016.



```
/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge
```

**UNITED STATES OF AMERICA VS. TALANIVALU YGNACIO OLOTOA; CR 15-00190 LEK ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**